**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-1229
_____

LEE A. DONALDSON;
JOHN CAPUANO,
Appellants

v.

INFORMATICA CORPORATION;
PAUL J. HOFFMAN

_____

On Appeal from the United States District Court for the Western District of Pennsylvania
District Court No. 2-08-cv-00605
District Judge: The Honorable Donetta W. Ambrose

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2011

Before: FUENTES and CHAGARES, *Circuit Judges*, and POLLAK, *Senior District Judge*[*]

(Filed:  March 28, 2011)

_____

OPINION
_____

FUENTES, *Circuit Judge.*

_____

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1

Appellants, Lee Donaldson and John Capuano, appeal from a grant of summary judgment in favor of defendant Informatica Corporation ("Informatica"). Appellants brought claims for breach of contract, detrimental reliance, *quantum meruit*, and violation of Pennsylvania's Wage Payment and Collection Law, 43 Pa. Stat. § 260.1 on the ground that they were entitled to certain commissions as set forth in Informatica's compensation plan. Donaldson also brought a *per se* defamation claim pursuant to 42 Pa. Cons. Stat. § 8343(a) against Informatica's Executive Vice President of Worldwide Field, Paul Hoffman. [1] For substantially the same reasons discussed by the District Court in its well-reasoned memorandum opinion, we will affirm. [2]

## I.

Because we write only for the parties, we will discuss the facts and proceedings to the extent necessary for resolution of this case. This case arises out of a dispute over the meaning of Section F of the 2008 Worldwide Incentive Compensation Terms & Conditions ("WICTC"), which governs the terms of employee commissions at Informatica. Section F of the WICTC sets forth the rules that apply when an account is transferred from one sales team to another, as occurred in this case. Section F provides:

> Where there is a transfer of an account between salespersons, typically at the start of the fiscal, the account may be subject to a "hold" by the prior salesperson. Quota, commission and/or bonus credit for transactions closed within three months of the transfer date will be given 100% to the prior salesperson for

---

[1] Plaintiffs have not appealed the District Court's grant of summary judgment in favor of Informatica on plaintiffs' claims of detrimental reliance, *quantum meruit*, and violation of Pennsylvania's Wage Payment and Collection Law.

[2] The District Court had jurisdiction over this matter pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

the account. If applied, the same splits will apply up the management chain. After the three month period from the transfer date has passed, the New Account owner will receive 100% quota and/or bonus credit.

In some cases when there is a transfer of an account between salespersons quota, commission and/or bonus credit may be split on transactions closed within three months of the transfer date as follows, subject to the Quota Allocation guidelines in Section F above:

[setting forth specific commissions splits]

. . . After the three month period from the transfer date has passed, the New Account owner will receive 100% quota and/or bonus credit.

All holds and/or splits require the approval of the Vice President, Sales in each territory affected or the Executive Vice President, WorldWide Field Operations.

*Donaldson v. Informatica Corp.*, No. 08-605, 2009 WL 4348819, at *8-9 (W.D. Pa. 2009).

At the summary judgment stage, plaintiffs argued that the WICTC required Informatica management to grant *all* hold requests when an account intended for transfer qualified as an "active opportunity," meaning that the deal was likely to close within ninety days. Accordingly, Donaldson and Capuano submitted that they were entitled to 100 percent of the commission from a second Dell sale that took place in 2008.[3] In

---

[3] In 2006, plaintiffs asked for, and received, a one-year "hold" on the Dell account, entitling them to 100 percent of the commission on any sales to Dell that they closed in 2007. Although one Dell deal closed in 2007, plaintiffs were unable to complete a second sale to Dell within the year. Plaintiffs sought to extend the "hold" on the Dell account through 2008, in order to receive the full commission from the second Dell sale, but Informatica denied that request. Plaintiffs subsequently agreed to receive 25 percent of the commission of that sale.

support of this position plaintiffs relied almost exclusively on Section F of the WICTC, which they argued was "clear, unambiguous, and susceptible to only one meaning," i.e., that an original account holder has the *right* to subject an active opportunity when the account is being transferred to another sales team. *Id.* at *9. In the alternative, plaintiffs urged the District Court to find that Informatica had violated its obligation to use its discretion to grant hold requests in good faith.

In granting summary judgment in favor of Informatica, the District Court agreed with plaintiffs that the "contract language at issue is clear and unambiguous." *Id.* at *10. However, the court found that the contract unambiguously "provides that holds are permissive and require executive approval." *Id.* at *11. The District Court wrote:

> I disagree with Plaintiffs, however, that anything in Section F of the WICTC even remotely suggests, let alone plainly and unambiguously states, that a salesperson is *entitled* to subject any "active opportunity" for a sale within a transferred account to a hold or that Informatica management *must* grant such a hold request. To the contrary, the first sentence of Section F plainly states that "[w]here there is a transfer of an account between salespersons, ... the account *may* be subject to a hold by the prior salesperson." It is beyond dispute that "may" is a permissive, not mandatory, term. *See, e.g., Source Search Techs., LLC v. Lending Tree, LLC,* No. 04-4420, 2007 WL 1302443, at *8 (D.N.J. May 2, 2007) (contrasting permissive "may" and "can" with mandatory "must"). Similarly, the last sentence of Section F plainly states that *"all* holds and/or splits *require the approval* of the Vice President, Sales in each territory affected or the Executive Vice President, Worldwide Field Operations." WICTC, App'x 2, § F (emphasis added). This sentence further demonstrates that holds are not automatic and that salespersons do not have a unilateral right to a hold.

4

*Id.* at *10.

The District Court also rejected plaintiffs' good faith argument, finding that the implied requirement that parties perform their duties in good faith may not be "used to override an express contractual term." *Id.* (citing *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000)). That is, the good faith duty could not be used to "read into the contract a mandate that Informatica approve any hold requested." *Id.* To the extent that the plaintiffs argued that the defendant acted without the requisite good faith in denying their hold request, the court found that plaintiffs "have not pointed to any record evidence from which a reasonable jury could conclude that Informatica violated any implied duty of good faith in this case." *Id.* at *13.

The District Court also granted summary judgment on Donaldson's defamation claim, which arose out of an email Executive Vice President Hoffman sent to several Informatica executives. The parties agree that the e-mail was "conditionally privileged" under the law, meaning that "the speaker and recipient share a common interest in the subject matter and both are entitled to know about the information." *Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 663 (Pa. Super. Ct. 2010). Thus, in order to set forth a *per se* defamation claim under Pennsylvania law, Donaldson needed to show that privilege was abused, meaning that the statement was: (1) "actuated by malice or negligence"; (2) "made for a purpose other than that for which the privilege is given"; (3) "made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege"; or "(4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose." *Elia v. Erie Ins. Exchange*, 634 A.2d 657,

5

661 (Pa. Super. Ct. 1993). In a *per se* claim, Donaldson also needs to allege "general damages, *i.e.,* proof that one's reputation was actually affected by defamation or that one suffered personal humiliation." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 344 (Pa. Super. Ct. 2008).

After considering the case law, the District Court rejected Donaldson's allegations that Hoffman acted maliciously, finding that the evidence did not raise a "jury question as to malice." *Informatica*, 2009 WL 4348819, at *16. The court also concluded Donaldson had not established harm to his reputation and thus his claim failed as a matter of law.

## II.

We exercise plenary review over the District Court's grant of summary judgment, and "we assess the record using the same summary judgment standard that guides the district courts." *Gardner v. State Farm Fire and Cas. Co.,* 544 F.3d 553, 557 (3d Cir. 2008). That is, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Although plaintiffs argued in the District Court that the WICTC is an *unambiguous* contract, they now argue for the first time on appeal that the WICTC is an *ambiguous* contract. They identify several terms in the contract, including "hold" and "transfer," that are not defined, and further argue that several provisions of Section F may be subject to several interpretations and ask that we remand this case to permit the District Court to consider extrinsic evidence relevant to interpreting the WICTC. We will

6

decline to remand this matter. After a careful review of the record and the parties' arguments, we find no basis for disturbing the District Court's reasoning. The plain language of Section F clearly states that a "hold" is permissive, and we are not persuaded otherwise.

Plaintiffs' second argument on appeal is that the District Court erred by declining to apply the implied covenant of good faith concluding that there were no disputes of material fact relating to whether Informatica acted in bad faith by declining plaintiffs' hold request. We will also affirm the District Court's grant of summary judgment as it relates to this claim. It is true that the implied covenant of good faith imposes a duty of good faith and fair dealing in every contract. In this case, Informatica executives had the discretion to decide whether to award a second hold. Plaintiffs have failed to provide any evidence showing a genuine issue of material fact pertaining to Informatica's alleged bad faith in denying plaintiffs this discretionary action.

Finally, we will also affirm the District Court's summary judgment order as it pertains to Donaldson's defamation claim. Donaldson has conceded that Hoffman's January 16, 2008 e-mail was conditionally privileged. After a careful review of the record and the parties' arguments, we agree with the District Court that Donaldson has failed to identify a genuine material factual dispute relating to Hoffman's intent. In addition, for the reasons set forth in the District Court opinion, we also agree that Donaldson has failed to allege general damages and therefore his claim must fail.

**III.**

For the reasons above, we will affirm.